IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL LATTANZO, | ) |
|         Plaintiff, | ) No. 2:23-cv-407 |
| vs. | ) Judge Robert J. Colville |
| DUNBAR TOWNSHIP and NORTH FAYETTE WATER AUTHORITY, | ) |
|         Defendants, | ) |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court is a Motion to Dismiss (ECF No. 12) filed by Defendant, North Fayette Water Authority ("NFWA"), and a Motion to Join the Motion to Dismiss (ECF No. 14) filed by Defendant, Dunbar Township. Defendants seek dismissal, with prejudice, of all claims set forth in Plaintiff, Michael Lattanzo's Complaint. (ECF No. 1). Defendants' Motions have been fully briefed and are ripe for disposition.[1]

### I.    Introduction and Factual Background

#### A.  Procedural History

Plaintiff initiated this action with the filing of his Complaint on March 9, 2023. ECF No.1. On May 15, 2023, NFWA filed its Motion to Dismiss (ECF No. 12) along with its Brief in Support (ECF No. 13). On May 15, 2023, Dunbar Township filed its Motion for Joinder. (ECF No. 14).

---

[1] This case is one of two companion cases filed against Defendants NFWA and Dunbar Township. The second companion case is brought by Plaintiffs, Gail Layman and Joseph Layman, who raise the same allegations as Plaintiff, Michael Lattanzo. *See Layman v. Dunbar Township, et al.*, 2:22-cv-01605 (W.D. Pa. 2022). Defendants NFWA and Dunbar Township also filed identical motions to dismiss in the *Layman* companion case. Therefore, the Court's Memorandum Opinions addressing the motions to dismiss in *Layman* and *Lattanzo* are nearly identical.

On June 5, 2023, Plaintiff filed his Brief in Opposition. (ECF No. 15). On June 12, 2023, NFWA filed its Reply Brief. (ECF No. 16).

### B. Factual Background

In the Complaint, Plaintiff sets forth the following factual allegations relevant to the Court's consideration of the Motions at issue.

Plaintiff is a resident of Fayette County, Pennsylvania. Compl. ¶ 5. Plaintiff allegea that Dunbar Township "holds a contract with [NFWA] and that, under the contract, [NFWA] is required to provide water to [Dunbar] Township's residents including, but not limited to, Plaintiff, as well as to the fire hydrants in [Dunbar] Township on behalf of [Dunbar] Township." *Id.* at ¶ 11. Therefore, Plaintiff alleges, Dunbar Township and NFWA "had a duty to Plaintiff to provide water to the Plaintiff's property as well as to properly dispense water to and/or service, inspect and maintain the fire hydrants surrounding Plaintiff's property." *Id.* at ¶ 13.

Plaintiff alleges that, "[f]or several years, multiple properties in [Dunbar] Township, including, but not limited to, the Plaintiff's property, have had dangerously low water pressure." *Id.* at ¶ 14. Further, Plaintiff alleges that "similarly situated properties" in Dunbar Township do not have low water pressure and "[n]o rational basis exists for this difference in treatment." *Id.* at ¶ 15. Plaintiff alleges the same is true for fire hydrants in Dunbar Township, stating that multiple fire hydrants in Dunbar Township, including ones near Plaintiff's property, have had dangerously low water pressure for several years. *Id.* at ¶ 16. Similarly, Plaintiff alleges that "similarly situated properties" in Dunbar Township are near fire hydrants that do not have low water pressure and that "[n]o rational basis exists for this difference in treatment." *Id.* at ¶ 17.

As alleged by Plaintiff, Dunbar Township and NFWA "had actual knowledge" of the low water pressure at the properties and fire hydrants. *Id.* at ¶ 18. Plaintiff contends that the installation

of a pump system would have corrected the low water pressure to the properties and fire hydrants and that Dunbar Township and NFWA had knowledge that a pump system would correct these issues. *Id.* at ¶ 21, 34.

On March 11, 2021, Plaintiff's property caught on fire. *Id.* at ¶ 2. Plaintiff alleges that, as a result of the low water pressure, the fire hydrants "twenty-five yards from the property . . . failed to distribute water with the adequate amount of water pressure" and stopped distributing water after two minutes. *Id.* at ¶ 25. Further, Plaintiff alleges that the fire hydrants "one street away from the Plaintiff's property . . . failed to distribute any water." *Id.* at ¶ 26. Plaintiff further alleges that, as a direct and proximate cause of the low water pressure, Plaintiff's house was destroyed, property inside Plaintiff's house was destroyed, and several of Plaintiff's pets were killed by the fire. *Id.* at ¶ 30-32. Plaintiff contends that Dunbar Township and NFWA's failure to maintain the fire hydrants and the water pressure "created a reasonably foreseeable risk that a property in [Dunbar] Township, including the Plaintiff's property, could be destroyed by a fire that could have otherwise been controlled with properly working fire hydrants." *Id.* at ¶ 37.

In his three count Complaint, Plaintiff raises causes of action under 42 U.S.C. § 1983 and the Fourteenth Amendment Due Process Clause, 42 U.S.C. § 1983 and the Fourteenth Amendment Equal Protection Clause, and negligence.

## II.     Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S.*

*Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim."  *Iqbal*, 556 U.S. at 675.  Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)).  Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

4

*Connelly*, 809 F.3d at 787.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### III.   Discussion

Defendants seek dismissal of Counts I, II, and III of the Complaint.

#### A.   Count I

Count I alleges a § 1983 claim under the Fourteenth Amendment Substantive Due Process Clause.  It is well established that by itself, § 1983 does not create any rights, and instead provides a remedy for violations of those rights created by the Constitution or federal law.  *See Baker v. McCollan*, 443 U.S. 137, 144 (1979).  Therefore, in order for a plaintiff to state a claim, the "plaintiff must show that defendants, acting under the color of state law, deprived him of a right secured by the Constitution or the laws of the United States."  *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 907 (3d Cir. 1997) (citing *Parratt v. Taylor*, 541 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986)).  Here, Plaintiff alleges

that Defendants violated his Fourteenth Amendment right to substantive due process under the state created danger theory.[2]

The state created danger theory is an exception to the general rule that "governments and government actors do not have an affirmative obligation to protect citizens from violations of life, liberty, or property committed by private actors." *McGhee v. City of Philadelphia*, No. Civ.A.02-8992, 2003 WL 22518759, at *2 (E.D. Pa. Oct. 23, 2003) (citing *DeShaney v. Winnebago County Dep't of Soc. Serv*, 489 U.S. 189, 196 (1989)).  When evaluating whether a plaintiff has asserted a claim under the state created danger theory, the Third Circuit articulated a four-part test finding that a state actor is liable if:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

*Mark v. Borough of Hatboro*, 51 F.3d 1137, 1152 (3d Cir. 1995).

Defendants focus their arguments on the first and fourth elements. NFWA Br. in Supp. 7-10.  As for the first element, Defendants argue that Plaintiff has failed to allege any fairly direct harm.  NFWA Br. in Supp. 8.  Specifically, Defendants argue that Plaintiff must allege that a state official's actions were the catalyst for the harm and because, here, the fire was not caused by Defendants, Plaintiff has not met this requirement.  *Id.*  As to the fourth element, Defendants argue that it is a misuse of authority, and not a failure to use authority, that form the basis of a state created danger claim.  *Id.* at 9.  Defendants argue that Plaintiff's allegations are premised on

---

[2] Defendants argue that Plaintiff has failed to plead a substantive due process claim, in general, and a claim under the state created danger theory of substantive due process.  NFWA Br. in Supp. 4-10.  Plaintiff only responds in support of a state created danger claim (*see* Pl. Br. in Opp. 6-13) and, therefore, the Court will only address whether Plaintiff has pled a state created danger claim.

6

Defendants' failure to act and, therefore, do not satisfy element four. *Id.* at 10. Plaintiff argues that he has met all four elements of a state created danger claim.

Under the first element, a plaintiff must "plead that the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions." *Phillips v. County of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008). Here, as stated above, Defendants focus their argument on the "fairly direct harm" requirement of element one.

> To fulfill the "fairly direct" requirement of the state-created danger claim, the plaintiff must plausibly allege that state officials' actions "precipitated or w[ere] the catalyst for" the harm for which the plaintiff brings suit. [*Morse v. Lower Merion School Dist.*, 132 F.3d 902, 910 (3d Cir. 1997)]. "Precipitate," in turn, means "to cause to happen or come to a crisis suddenly, unexpectedly, or too soon." *Webster's Third New International Dictionary* 1784 (1993); *see also The Random House Dictionary of the English Language* 1521 (2d ed.1987) (defining "precipitate" as "to hasten the occurrence of; bring about prematurely, hastily, or suddenly"); *id.* at 325 (defining "catalyst" as "a person or thing that precipitates an event or change"). Thus, it is insufficient to plead that state officials' actions took place somewhere along the causal chain that ultimately led to the plaintiff's harm.

*Henry v. City of Erie*, 728 F.3d 275, 285 (3d Cir. 2013).

In *Henry*, the plaintiffs were administrators of the estates of a tenant and her guest who died in a fire. *Henry*, 728 F.3d at 277. The defendants were the City of Erie, the Housing Authority of the City of Erie ("HACE"), and other individuals. *Id.* In sum, HACE was responsible for inspecting the apartments of participants in a Section 8 housing program to ensure the apartments complied with the Housing Quality Standards. *Id.* The Housing Quality Standards required that qualifying apartments have a smoke detector and an alternative means of exist in case of a fire. *Id.* The plaintiff tenant was part of this program and resided in an apartment that underwent HACE inspections. *Id.* at 278. A review of the completed inspections showed that the apartment at issue was routinely missing a smoke detector, and the tenant and landlord were both aware of the missing

7

smoke detectors. *Id.* at 279. Unfortunately, the unit caught on fire and the tenant and her guest died in the unit. *Id.*

In determining whether the plaintiffs had pled a valid state created danger claim, the Third Circuit evaluated whether the plaintiffs had pled a fairly direct harm. *Id.* at 283. The Third Circuit held that the plaintiffs had failed to plead a fairly direct harm because the "defendants' approval and subsidization of the apartment did not lead 'fairly directly' to the fire that claimed the lives of [the tenants]." *Id.* at 285. Further, the Third Circuit held that the "[d]efendants' actions were separated from the ultimate harm by a lengthy period of time and intervening forces and actions." *Id.* This was because,

> [a]lthough the case of the fire [wa]s not known at this stage of the litigation, plaintiffs d[id] not allege that defendants caused the fire or increased the apartment's susceptibility to fire. Nor d[id] plaintiffs contend that defendants failed to install a smoke detector and a fire escape on the third floor of [the tenant's] apartment. Plaintiffs' allegations against defendants [we]re one step further removed: plaintiffs contend[ed] that defendants should have compelled or induced the landlord/owners to install a fire escape and smoke detector (or induce [the tenant] to live elsewhere) . . . Unfortunately for plaintiffs, their reasoning proves too much. Plaintiffs' complaint makes clear it was the owners' responsibility—not defendants'—to install a smoke detector and fire escape.
>
> . . .
>
> Further attenuating the connection between defendants' actions and the ultimate harm is the fact that [the tenant] remained in the apartment and received rent subsidies despite having actual notice the apartment failed to meet the Housing Quality Standards. There was substantial time to reflect on the living situation before the fire took place. Defendants did not "'throw [] [her] into a snake pit,'" *Ye v. United States,* 484 F.3d 634, 637 (3d Cir. 2007) (quoting *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir. 1982)), with all the urgency that such a situation would entail. According to the complaint, defendants warned [the tenant] that her apartment was not up to code. And plaintiffs d[id] not allege that defendants did anything to hinder her or the landlord/owners from bringing it into compliance. As unfortunate as the circumstances may be, "[w]hen a victim bears some responsibility for the risks she has incurred, it is even more difficult to say that the 'state' has 'created' the 'danger' to her by its affirmative acts." *Jones v. Reynolds,* 438 F.3d 685, 694 (6th Cir. 2006).

*Id.* at 285-86.

While the facts of *Henry* are distinguishable from those here, the Court finds the Third Circuit's analysis helpful in evaluating element one of Plaintiff's state created danger claim. Specifically, the Third Circuit held that the harm in *Henry* was not fairly direct because the defendant's approval of the apartment did not directly lead to the fire and "[d]efendants' actions were separated from the ultimate harm by a lengthy period of time and intervening forces and actions." *Id.* at 285.

Here, like in *Henry*, the fire was not a fairly direct result of Defendants' actions because Plaintiff has not alleged that Defendants caused the fire, increased the property's susceptibility to fire, or failed to install fire hydrants. Instead, Plaintiff alleges that, for several years, Defendants failed to take action to provide adequate water pressure to Plaintiff's property and the fire hydrants surrounding Plaintiff's property. Compl. ¶¶ 14, 19, 21-22, 33, 37, 43. Therefore, any action by Defendants was separated from Plaintiff's harm by both time and intervening acts. *See Knellinger v. York Street Property Development*, LP, 57 F. Supp. 3d 462, 469 (E.D. Pa. 2014) (granting motion to dismiss where "plaintiffs ha[d] not pled that the City's actions precipitated the fire at the Property"); *see also Comegar v. City of Chester*, Civil Action No. 20-cv-5328, 2022 WL 15524953, at *4 (E.D. Pa. Oct. 26, 2022) (finding that the City's affirmative act of issuing a certificate of occupancy, despite the property not passing inspection, was separate from the ultimate harm of the property catching on fire). Based on the above, Plaintiff has not satisfied the first element of a state created danger claim.

Notwithstanding the above, the Court will also address whether Plaintiff has met the fourth element of a state created danger claim. Under the fourth element, Plaintiff must allege that "the state actors used their authority to create an opportunity that otherwise would not have existed for

the third party's crime to occur." *Mark*, 51 F.3d at 1152.  In *Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006), the Third Circuit stated that

> [l]iability under the state-created danger theory is predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger." *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1374 (3d Cir. 1992) (en banc) (emphasis supplied); *Brown v. Grabowksi*, 922 F.2d 1097, 1100-01 (3d Cir. 1990) (finding that *DeShaney* holds "that a state's failure to take affirmative action to protect a victim from the actions of a third party will not, in the absence of a custodial relationship . . . support a civil rights claim").  It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause.

*Bright*, 443 F.3d at 282.

Defendants allege that Plaintiff has not satisfied the fourth element because Defendants' alleged failure to act—in this case Defendants' failure to provide adequate water pressure—cannot form the basis of a valid state created danger claim.  NFWA Br. in Supp. 9.  Plaintiff argues that he has alleged affirmative acts against Defendants and specifically points the Court to his allegations that Defendants were required to provide water and inspect/maintain fire hydrants; that the Plaintiff's property and the surrounding fire hydrants had low water pressure; and that Defendants had actual knowledge of the low water pressure and did not purchase a pump system to remedy the low water pressure.  Resp. 10-11.

Here, despite Plaintiff's arguments to the contrary, his allegations do not sufficiently allege that Defendants acted affirmatively.  Instead, the allegations center around Defendants' failures to provide appropriate water pressure and/or install a pump system.  The Third Circuit has made clear that Plaintiff must allege an affirmative action, and not just an inaction or omission by Defendants. *See Bright*, 443 F.3d at 282.  Because Plaintiff's Complaint does not make any such allegations, the fourth element of a state created danger claim has not been sufficiently pled.

Therefore, for the reasons stated above, Count I is dismissed, without prejudice.

### B. Count II

Count II alleges a § 1983 claim under the Fourteenth Amendment Equal Protection Clause. "[A] plaintiff may pursue an equal protection claim under a "class of one" theory by showing that a state actor treated him differently from similarly situated individuals without a rational basis for the different treatment." *Patterson v. Strippoli*, 639 Fed. Appx. 137, 142 (3d Cir. 2016) (citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000); *PG Publ'g Co. v. Aichele,* 705 F.3d 91, 114 (3d Cir. 2013)). "Such a plaintiff need not show he was a member of a protected class or that he was treated differently for an impermissible reason, such as race." *Id.* (citing *D'Altilio v. Dover Tp.,* Civil Action No. 1:06-CV-1931, 2007 WL 2845073, at *10 (M.D. Pa. Sept. 26, 2007)).

Defendants argue that Plaintiff's allegations at Count II are only conclusory, boilerplate allegations. NFWA Br. in Supp. 11-12. Specifically, Defendants argue that Plaintiff must provide factual allegations as to how the other neighbors in the township are similarly situated to him. *Id.* at 12-13. Further, Defendants argue that Plaintiff failed to allege facts to support that Defendants' conduct was "irrational and wholly arbitrary" in order to satisfy the "no rational basis" standard. *Id.* at 13.

Plaintiff disagrees. Plaintiff argues that, under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) and *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008), he is only required to plead that he was treated differently from similarly situated individuals, which he has done. Resp. 14-15. Plaintiff does not address Defendants' second argument.

The Court agrees with Defendants that Plaintiff has failed to plead a valid class of one claim. The Court finds that Plaintiff must make more than a conclusory allegation that he was treated differently than others similarly situated in order to meet the pleading standards of

11

*Iqbal/Twombly*. *Perano v. Township of Tilden*, 423 Fed. App'x 234, 238 (3d Cir. 2011). Plaintiff's citations to *Olech* and *Phillips* do not convince the Court otherwise, as those cases were decided prior to the Supreme Court's decision in *Iqbal*. *See Save Our Saltsburg Schools v. Blairsville-Saltsburg School District*, Civil Action No. 2:21-cv-601, 2021 WL 2209294, at *4 n.3 (W.D. Pa. June 1, 2021) (noting that *Phillips* was decided prior to *Iqbal* and that multiple courts in this district have speculated that the holding in *Phillips* was superseded by the tighter pleading standards set forth in *Iqbal*). Instead, under *Iqbal*, Plaintiff must make "specific factual allegations as to the allegedly similarly situated parties" in order to "ma[k]e plausible the conclusion that those parties exist and that they are like him in all relevant aspects." *Perano*, 423 Fed. App'x at 238. Here, a review of the Complaint, makes it clear that Plaintiff has failed to meet this burden.

However, the Court does not agree with Defendants that Plaintiff has failed to allege that the difference in treatment was irrational and wholly arbitrary. Instead, assuming Plaintiff can meet his burden above by pleading that similarly situated individuals exists, Plaintiff's allegations that he was treated differently than those similarly situated individuals and that no rational basis exists for this difference in treatment, are enough to meet Plaintiff's pleading requirements to allege that Defendants acted irrationally and wholly arbitrarily. Whether Plaintiff will be able to prove these allegations is, of course, another matter which cannot be addressed at this time.

For the reasons stated above, Count II is dismissed, without prejudice.

### C. Count III

Count III alleges a negligence claim against Defendants. Defendants argue that, unless an exception applies, they are immune from suit under the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"). NFWA Br. in Supp. 11. The PPSTCA provides: "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on

account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." Pa.C.S. § 8541. Exceptions to this form of immunity are found at Pa.C.S. § 8542, which provides, in pertinent part:

> (a) Liability imposed. -- A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
>   (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>
>   (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.
>
> (b) Acts which may impose liability. -- The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> ....
>
>   (5) *Utility service facilities.* -- A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542.

Here, Defendants argue that the utility service facilities exception does not apply because "[t]he application of this exception requires an allegation of the existence of a dangerous condition inherent in the utility service facility itself." NFWA Br. in Supp. 14 (citing *Finn v. City of Phila.*,

13

664 A.2d 1342, 1345 (Pa. 1995)).  Specifically, Defendants argue that Plaintiff failed "to allege that the low water pressure was a 'dangerous condition.'"  *Id.* at 15.  Further, Defendants argue that Plaintiff did not allege that Defendants owned the utility facilities, which is a requirement for the exception to apply.  *Id.* at 16.

Plaintiff argues that he has stated a cause of action for negligence and that Defendants' immunity under the PPTSCA is a question for the jury.  Resp. 17-18.

To begin, the Court has the authority to address Defendants' immunity under the PPTSCA when deciding a motion to dismiss.  *See Bright*, 443 F.3d at 286-88 (upholding district court's decision to address the defendants' immunity under the PPSTCA at the motion to dismiss stage); *Riveros-Sanchez v. City of Easton*, 861 Fed, Aoo'x 819, 821-22 (3d Cir. 2021) (same).  That said, the Court finds that Plaintiff has alleged some facts in support of a claim under the utility service facilities exception.  Despite Defendants' arguments to the contrary, Plaintiff alleges that a dangerous condition existed, and that Defendants were aware of the dangerous condition.  *See* Compl. ¶ 59 ("Defendants breached th[eir] duty when they failed to take any action, despite having actual knowledge of the low water pressure on the Plaintiff's property and the dangerously low water pressure of the fire hydrants near the Plaintiff's property").  However, Defendants are correct that Plaintiff has failed to allege any facts as to whether Defendants owned the water utilities at issue.  Therefore, for this reason alone, Defendants' Motion to Dismiss Count III is granted, without prejudice.  Nothing in this Court's decision should be construed as preventing Defendants from reraising the issue of their immunity, if appropriate, at a later stage in the proceedings.

The Court will allow Plaintiff to amend his Complaint as to all three counts because the Court believes Plaintiff may be able to cure the identified pleading deficiencies.  The Court, however,

cautions, that while amendment may cure the current deficiencies at this stage in the proceedings, it remains far from clear to the Court precisely how Plaintiff will ultimately prove his claims.

## IV.     Conclusion

For the reasons discussed above, the Court will grant Defendant NFWA's Motion to Dismiss (ECF No. 12) and Defendant Dunbar Township's Motion to Join the Motion to Dismiss (ECF No. 14), without prejudice. An appropriate Order of Court will follow.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 18, 2024

cc/ecf: All counsel of record